OPINION OF THE COURT
Joseph J. Maltese, J.
The People have moved for an order to redact the HIV status of the complainant from the medical records inadvertently turned over to the defense counsel and for an order directing defense counsel not to disclose the complainant’s HIV status to the defendant who is alleged to have bitten the complainant in an altercation.
At issue is the complainant’s right to privacy and confidentiality versus the defendant’s right to know and the defendant’s right to full candid communication between his attorney and himself. Also at issue is whether the People or their agents or some other public official have a duty to disclose the HIV status of a person who is alleged to have been bitten by another and may have come in contact with the body fluids of the infected person.
 This court holds that the People may redact all references to the complainant’s HIV status provided that they arrange to disclose the information to the defendant through a physician or health officer. However, this court also holds that it cannot bar the attorney from making such disclosure to her client, but strongly recommends that the disclosure be made through a physician or other public health officer.
FACTS
The People allege that on September 11, 1994 at the entrance to a residential apartment building in which the defendant and the complainant both reside on the same floor, the defendant (Pedro M.) "hurled anti-gay epithets” at the complainant and then proceeded to punch him in the face and body. Later, on the seventh floor, the parties were again involved in an altercation which resulted in the complainant being bitten "over his denim shirt, causing the skin to break,” *712 but not tearing the shirt. The defendant is also accused of possessing a knife and of pushing himself into the complainant’s apartment.
The complainant’s sister called 911 and informed the operator that her brother had tested positive for Human Immunodeficiency Virus (HIV). The complainant was treated by Emergency Medical Services (EMS) personnel and brought to a hospital for further treatment. The complainant informed both the EMS technicians and the treating physician of his HIV status and that information was written down on the complainant’s medical records.
The defendant was subsequently arrested and charged with assault in the third degree (Penal Law § 120.00 [1]), menacing in the second degree (Penal Law § 120.14 [1]), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]) and criminal trespass in the second degree (Penal Law § 140.15).
During the discovery process, the prosecution turned over to the defense attorney the EMS report which made reference to the complainant’s HIV status. As a result, the defendant’s attorney became aware of the complainant’s HIV status. The defense attorney informed the People of what she had learned and exchanged her unredacted copy of the EMS report for a redacted copy omitting any reference to HIV. The defense counsel wishes to disclose to her client the complainant’s HIV status, but has agreed not to do so until this court rules on this matter.
The prosecutor has made what he calls an "ex parte motion” for a protective order permitting the redaction of the complainant’s HIV status from all discoverable material and to prohibit defense counsel from disclosing the complainant’s HIV status to her client (Pedro M.). While such an application for a protective order is usually made "ex parte”, this court was presented this unusual issue in the presence of both counsel in court at sidebar without the presence of the defendant. The court adjourned to chambers with counsel and not the defendant and entertained off the record oral arguments of this sensitive material. Both parties were given more than the statutory time allowed to submit further written arguments. Therefore, this court will not consider this motion to be "ex parte”, but "on notice” to the defense attorney.
The People argue that the complainant is worried that disclosure of his HIV status will subject him to discrimination *713 and possible physical attack. The complainant is also worried that his career as an entertainer will also be in jeopardy if such information is made public.

Public Health Law Article 27-F

Under Public Health Law § 2782 "[n]o person who obtains confidential HIV related information in the course of providing any health or social service or pursuant to a release of confidential HIV related information may disclose or be compelled to disclose such information”. (See also, 10 NYCRR 63.4.) Confidential HIV-related information is: "any information, in the possession of a person who provides one or more health or social services or who obtains the information pursuant to a release of confidential HIV related information, concerning whether an individual has been the subject of an HIV related test, or has HIV infection, HIV related illness or AIDS [Acquired Immune Deficiency Syndrome], or information which identifies or reasonably could identify an individual as having one or more of such conditions, including information pertaining to such individual’s contacts” (Public Health Law § 2780 [7]). Additionally, no person who receives confidential HIV information is allowed to disclose the information unless authorized (Public Health Law § 2782 [3]; 10 NYCRR 63.5).
The People state that EMS should not have disclosed the complainant’s HIV status to the District Attorney’s Office[1] and admit that the District Attorney Office’s subsequent "inadvertent redisclosure” to the defendant’s attorney was in violation of the Public Health Law. The People also correctly point out that there is a private cause of action for such a violation. (See, Matter of V., 150 Misc 2d 156 [Ct Cl 1991]; Nolley v County of Erie, 776 F Supp 715 [WD NY 1991]; Doe v Roe, 190 AD2d 463 [4th Dept 1993].) Additionally, Public Health Law § 2783 provides for a civil penalty of up to $5,000 per occurrence for a violation of this statute, and a person who wrongfully discloses such information is guilty of a misdemeanor (Public Health Law § 2783 [1], [2]).
Upon an application from a party seeking confidential HIV-related information, the statute gives a court of competent *714 jurisdiction the power to grant an order for disclosure of confidential HI V-r elated information upon the showing that there is: (1) a compelling need for disclosure of the information for the adjudication of a criminal or civil proceeding; (2) a clear and imminent danger to an individual whose life or health may unknowingly be at significant risk as a result of contact with the individual to whom the information pertains; (3) upon application of a State, county or local health officer, a clear and imminent danger to the public health; or (4) that the applicant is lawfully entitled to the disclosure and the disclosure is consistent with the provisions of this article (Public Health Law § 2785 [2]).
The legislative intent in creating article 27-F of the Public Health Law was to encourage people to take an HIV test without having to worry about discrimination and to protect a person’s privacy rights.
"The legislature recognizes that maximum confidentiality protection for information related to human immunodeficiency virus (HIV) infection and acquired immune deficiency syndrome (AIDS) is an essential public health measure. In order to retain the full trust and confidence of persons at risk, the state has an interest both in assuring that HIV related information is not improperly disclosed and in having clear and certain rules for the disclosure of such information. By providing additional protection of the confidentiality of HIV related information, the legislature intends to encourage the expansion of voluntary confidential testing for the human immunodeficiency virus (HIV) so that individuals may come forward, learn their health status, make decisions regarding the appropriate treatment, and change the behavior that puts them and others at risk of infection.
"The legislature also recognizes that strong confidentiality protections can limit the risk of discrimination and the harm to an individual’s interest in privacy that unauthorized disclosure of HIV related information can cause. It is the intent of the legislature that exceptions to the general rule of confidentiality of HIV related information be strictly construed.” (L 1988, ch 584, § 1, eff Feb. 1, 1989.)
DISCUSSION
The case at bar is not the typical situation. Usually, it is the prosecution that is seeking to disclose the HIV status of a defendant in order to warn the victim of a sexual assault. (See, *715 Matter of Doe v Connell, 179 AD2d 196 [4th Dept 1992] [where the court denied the People’s request to compel a defendant to submit to an AIDS test when the People’s goal was to "relieve” the victim and not use the information in the criminal action]; contra, People v Thomas, 139 Misc 2d 1072 [Schoharie County Ct 1988] [a pre-Public Health Law art 27-F case granting such a request]; People v Durham, 146 Misc 2d 913 [Sup Ct, Queens County 1990] [granting the People’s request for a blood sample when the defendant announced to the rape victim that he had AIDS]; see generally, Murphy, Violence Against Women is a Rapidly Rising Crime, NYLJ, Jan. 23, 1991, at 39, col 1.)
Disclosure was permitted where a dentist who was HIV positive had been treating patients. After his death from AIDS the State sought to obtain the doctor’s files in order to warn the dentist’s patients of the situation. (See, McBarnette v Feldman, 153 Misc 2d 627, 633 [Sup Ct, Suffolk County 1992].)
However, disclosure was not permitted where a plaintiff in a "tainted blood” case sought the health status and/or identity of a HIV positive blood donor in order to show that the blood bank or hospital was negligent in the screening of blood donors. That application for disclosure was denied for failure to show a "compelling need” for the information. (See, Roth v New York Blood Ctr., 157 Misc 2d 122 [Sup Ct, NY County 1993].)
In People v Anonymous (153 Misc 2d 436 [Monroe County Ct 1992]) a defendant bit two individuals (breaking the skin) while avoiding arrest. The defendant then told the arresting officer in the presence of the two individuals that she was HIV positive. The court found that the People had shown by clear and convincing evidence that there was a compelling need for the results of any prior AIDS tests taken by the defendant to be disclosed to them as well as for the defendant to undergo a new AIDS test.
Likewise in Matter of Gribetz (159 Misc 2d 550), the court held that there was a "compelling need” for proof on the issue of the defendant’s HIV status. In Gribetz (supra), the defendant bit a mental health worker (did not puncture the skin) who was trying to restrain the defendant. The defendant, who was charged with reckless endangerment in the first degree (Penal Law § 120.25), had previously told a Deputy Sheriff that she had AIDS when the Deputy had responded to the defendant’s prior threats to bite staff members of the hospital *716 in order to give them AIDS. The court allowed such disclosure because such information was necessary to prove that the defendant acted with depraved indifference to human life.
However, all of the above cases deal with a defendant’s HIV status. The case at bar deals with the victim of an alleged assault. A complainant’s HIV condition might be relevant when the complainant is a rape victim and the defendant alleges consent in order to try and show that the victim "consented” to the rape so that the defendant would be infected. (See, D’Orio, What To Do When The Charge Is Criminal Sexual Conduct And The Complainant Is HIV-Positive, 72 Mich B J 922 [1993].)
In the case at bar, the People are in essence claiming that the defendant bit the complainant at his own risk and that neither they nor the defendant’s assigned counsel has any duty to disclose the complainant’s HIV status to the defendant. Moreover, the People argue that the defense counsel should be ordered by this court not to disclose such information to the defendant.
This court does not agree with these arguments. Had the People originally sought a protective order to redact the HIV status from the EMS report, this court would have had to balance the competing rights of the infected individual with those of the unknowing person, who had contact with the infected individual.
At issue is the balancing of the rights of privacy and confidentiality of the infected person with the unknowing person’s right to know in order to be tested and treated, along with society’s right to stop the spread of HIV.
Notwithstanding the general proposition found in the Public Health Law about the confidentiality of the "protected” (infected) person, a greater right may be to protect the unknowing person who came into contact with the legislatively "protected” (infected) person in a way that would normally transmit the bodily fluids of the other. Fortunately, the Public Health Law does provide for court-ordered disclosure where there is "a clear and imminent danger to an individual whose life or health may unknowingly be at significant risk” (Public Health Law § 2785 [2] [b]).
It is not for the prosecutor to assess the imminency of the danger to another’s life or health, instead it should be that of the person who unknowingly came into contact with the blood or saliva of the infected person to assess the risk and take *717 whatever measures he or she believes prudent to safeguard his or her health. Clearly, early detection of such a health risk is better, not only for the unknowing individual, but to other unknowing persons that may subsequently come into contact with that person. In short, sometimes the rights of the People and society outweigh the individual’s right to privacy and confidentiality.
While such determinations ought be reviewed on an individual basis, disclosures to unknowing persons should be made, regardless of whether they are the victims of a crime or the alleged perpetrators of a crime. The unknowing contacted person’s right to know in order to take protective measures in this case outweighs the infected individual’s right to privacy and confidentiality. A person need not have full-blown AIDS before disclosure to the unknowing contacted person must take place. However, the identity of the "protected” (infected) person should be withheld.

Methods of Disclosure

Due to the penalties which may be imposed for unwarranted disclosure, and the hysteria that may follow disclosure, persons making such disclosure should be physicians or health officers authorized by statute or by such other person authorized by a court order. Undoubtedly, a series of questions will follow such a disclosure. Medical personnel with advice as to testing, treatment and prevention should be utilized to make such confidential disclosures when warranted (see, Public Health Law § 2782 [4].)
The disclosure to an unknowing person contacted should be that he or she may have come into contact with a person who has HIV or AIDS. The name of the infected person should not be disclosed.
Accordingly, this court conditionally grants the protective order to redact the information pertaining to the HIV status of the victim from all Rosario material and any other documents. The condition is that the People arrange for a physician or health officer to inform the defendant that he may have come into contact with a person who is infected with HIV. The name of that individual will not be disclosed to the defendant in order to protect the privacy and confidentiality of the protected person and to prevent retaliatory action on the part of the defendant or others.

*718
Attorney-Client Communication

The defense attorney who inadvertently came into possession of documents disclosing the HIV status of the complainant has a different posture.
One of the most protected privileged forms of communication recognized in Anglo-American law is that of an attorney and her client. There should be no bar to such communications, especially on a matter with which there is the exposure to the potential of a life-threatening situation.
While the attorney-client privilege is usually limited to matters affecting the client’s legal rights, clearly a matter affecting his very life and health cannot be barred as beyond the scope of the case. Since the privilege cannot be waived, except by the client, the Code of Professional Responsibility dictates that an attorney shall not conceal any matter from a client which might affect the relationship of the attorney and client.
An attorney must use his or her professional judgment "solely for the benefit of [the] client and free of compromising influences and loyalties. Neither [the lawyer’s] personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute [the lawyer’s] loyalty to [the] client.” (Code of Professional Responsibility EC 5-1.) This court believes that an attorney is clearly in a fiduciary relationship with her client. Therefore compelling an attorney to keep a secret from her client is not to be condoned, encouraged or ordered.
The attorney-client privilege predates the Public Health Law by centuries and no intention was disclosed by the Legislature in drafting article 27-F of the Public Health Law which would prevent an attorney from disclosing such vital facts, inadvertently disclosed to her by the District Attorney’s Office, which may affect the life and health of her client.
This court believes that notwithstanding the foregoing, the People have the right to petition a court to obtain an order precluding information from discovery where such disclosure will cause "substantial risk of physical harm, intimidation, economic reprisal, bribery or unjustified annoyance or embarrassment to any person” (CPL 240.50). It is clear that a victim’s HIV status will generally not be relevant or discoverable in virtually all cases which come before the court. However, what this court must decide is whether an attorney who *719 was given this information inadvertently by the People[2] should be allowed to tell her client of the situation.
The closest case to the one at bar is that of Dwight B. v Board of Educ. (157 Misc 2d 1004 [Sup Ct, Orange County 1993]). In Dwight B. (supra), the court refused to preclude a defendant from offering the fact that the plaintiff was HIV positive after a hospital wrongfully disclosed such information to the defendant.
Additionally this court finds that the legislative intent in enacting Public Health Law article 27-F to encourage people to be tested for HIV will not be compromised by allowing an attorney to inform her client that the person he bit was HIV positive. Moreover, there has been no showing how this disclosure would deter others from being tested for HIV.
Since all of these court records and proceedings pertaining to this issue will be sealed, the chance of discrimination is limited.
In addition, the HIV status of the victim has not been shown to be relevant in the assault case at bar and such information will be precluded from use at trial by either side.
However, this court rules that while it may not interfere with an attorney’s relationship with her client, it strongly recommends that the attorney chose to inform the client by the prescribed method of using a physician or health officer to notify the client who will then be available to answer any inquiry about testing, treatment and prevention. Indeed, the attorney need not be present when this takes place. The physician or health care officer may not disclose the name of the infected person thereby protecting the infected person’s privacy and confidentiality. This leaves the inevitable pressing question of what does the attorney tell her client when he asks, is the complainant HIV positive? This court will not prohibit an attorney from truthfully answering such a question and will not interfere in the attorney-client relationship.

. See, Ordway v County of Suffolk (154 Misc 2d 269 [Sup Ct, Suffolk County 1992]). In Ordway (supra), the court held that the Suffolk County Police Department was under no duty to tell a treating doctor that his patient (a defendant in a burglary) was HIV positive as the information would not have affected the doctor’s treatment.

. See, Coleman v American Red Cross, 979 F2d 1135 (6th Cir 1992) (a case where the plaintiffs attorney in a civil case was able to figure out who the donor was by investigating the unredacted portions of the donor card).