*442 OPINION OF THE COURT
Joseph J. Maltese, J.
A defendant who pleads guilty to rape in the third degree (Penal Law § 130.25) by way of an Alford-Serrano[2] plea, notwithstanding his claims of innocence, is convicted of a felony. Accordingly, he is subject to the collateral consequences of that conviction to include being classified under the Sex Offender Registration Act (SORA; Correction Law § 168 et seq.) and being subject to take an HIV test upon the request of the victim.
FACTS
The defendant was indicted in 1994 in a 28-count indictment charging that he engaged in sexual relations with his 15-year-old daughter, during a three-month period.
The defendant entered into a negotiated Alford-Serrano plea to one count of rape in the third degree (Penal Law § 130.25) with the Assistant District Attorney, with the knowledge and consent of the victim’s mother. The court in view of the representations of the prosecutor, and the defense along with the victim’s mother, accepted the plea bargain based on the fact that the victim was of limited intelligence who would be unduly traumatized by testifying in court against her father. While the defendant maintained his innocence he claimed that a jury might convict him of rape in the first degree rather than the statutory rape charge to which he pleaded.
The defendant argues that since he took an Alford-Serrano plea, whereby he maintained his innocence, yet acknowledged that the prosecutor may have been able to obtain a conviction, it should not be used against him in calculating his classification as a "sex offender” pursuant to the SORA.
After the plea, the Assistant District Attorney moved pursuant to CPL 390.15 that the defendant submit to a human immunodeficiency virus (HIV) test. Attached to the People’s motion was an application for HIV testing signed by the alleged victim.[3] The defendant steadfastly refused to take the HIV test on the ground that the defendant still maintains his innocence and no proof otherwise was ever presented to this court. He also argues that the disclosure of a "positive” test result if it *443 occurred would harm his reputation in the community since the victim’s family has in the past proliferated defamatory written materials attacking him and his employer.
A defendant who takes an Alford-Serrano plea "does not accept responsibility for the offense”. Quite the contrary, the defendant here vehemently protested his guilt and maintains his innocence. However, the defendant cannot have it both ways; he cannot maintain innocence and thereby circumvent the collateral consequences of his plea of guilty or the nature of his plea.
SEX OFFENDER REGISTRATION ACT
1. Registration and Notification
Under the Sex Offender Registration Act, the New York version of "Megan’s Law”, a court must classify the defendant as a "type of’ sex offender. In order to classify the defendant a "Sex Offender Registration Act Risk Assessment Instrument” (worksheet) promulgated by the Board of Examiners of Sex Offenders pursuant to Correction Law § 168-Z is utilized. The worksheet designates a numerical value to "risk factors” which are then added together. The resulting sum determines the presumption of the defendant’s risk level under the statute. One of the categories of risk is whether the defendant has accepted responsibility for the crime. Here, the defendant has not accepted responsibility and still maintains his innocence by way of his Alford-Serrano plea. The defendant challenges this court’s assessing of points for not accepting responsibility for the crime.
Under the SORA, individuals convicted of certain designated offenses are required to register with the Division of Criminal Justice Services (DCJS) within 10 days of either their discharge from prison, their release from parole, or their sentence of probation (Correction Law § 168-f). The court must determine the risk level of the defendant to determine the level of notification to the public that will be made. There are three levels of risk: (1) low; (2) moderate; and (3) high. Although notification to local law enforcement agencies is mandated for all three levels of sex offenders, public or community notification is only authorized for levels 2 and 3 sex offenders. A level 2 designation will allow law enforcement agencies to release information to the public about the sex offense committed, a photograph of the offender and his zip code (Correction Law § 168-Z [6] [b]). If the offender is a level 3 risk the law enforce *444 ment agency can disseminate the exact addresses of the offender (Correction Law § 168-Z [6] [c]).[4]
2. The Sex Offender Registration Act Risk Assessment Instrument
The Sex Offender Registration Act Risk Assessment Instrument is used by the Division of Parole, the Department of Probation, and the courts to determine the presumptive risk level of the sex offender. The worksheet incorporates the factors contained in Correction Law § 168-Z and assigns a point value to the various factors. The point system is further divided up into four categories: (1) current offense(s);[5] (2) criminal history;[6] (3) postoffense behavior;[7] and (4) release environment.[8] The levels of sex offenders are determined as follows: level 1 = 0 *445 to 70 points; level 2 = 75 to 105 points; and level 3 = 110 to 300 points. Additionally, there are four other factors which override the numerical total and will automatically classify the offender a level 3. They are: offender has a prior felony conviction for a sex crime; offender caused serious physical injury or death; offender has made a recent threat that he will commit a sexual or violent crime; or there has been a clinical assessment that the offender has a psychological, physical, or organic abnormality that decreases ability to control impulsive sexual behavior (see, People v Cook, NYLJ, Nov. 22, 1996, at 31, col 2 [Sup Ct, Queens County]; People v Lombardo, 167 Misc 2d 942 [Nassau County Ct 1996]).
Pursuant to subdivision (3) of Correction Law § 168-d, this court conducted an in camera session where counsel for the defendant and the prosecutor were present. The defendant had waived his right to be present. Each side was granted an opportunity to discuss the various factors on the worksheet. Mathematically, the court assessed a presumptive risk factor total of 80 points, including 10 points for "not accepting responsibility for the offense” due to the Alford-Serrano plea and the comments made to probation in the presentence report.[9]
3. Alford-Serrano Plea
When a defendant enters an Alford-Serrano plea, although he is not admitting to committing the crime in question, that conviction can still be used against him. For example, a criminal conviction is conclusive proof of the underlying facts in a subsequent civil action even if that conviction results from an Alford-Serrano plea. Justice Niehoflf writing for the Appellate Division, Second Department, held that "[t]he criminal defendant who enters such a plea is no less guilty than one who is convicted of the same charge by a jury or by a conventional guilty plea, and is subject to no less punishment” (Merchants *446 Mut. Ins. Co. v Arzillo, 98 AD2d 495, 506 [1984]). Justice Niehoff went on to state: "While it is true that in a Serrano-type guilty plea there is no admission, as such, of the facts justifying the conviction, it is manifest that a defendant entering such a guilty plea, like any defendant entering a conventional guilty plea, chooses, for reasons which he deems good and sufficient, not to avail himself of the opportunity to contest the facts underlying the charge against him. That of course is his prerogative. However, he must accept the consequences of his action” (supra).
This court is of like mind. Even though the defendant did not admit the offense charged, he did plead guilty to it. Therefore his lack of taking responsibility for his actions is a factor rightfully considered by this court in assessing points against a defendant on the SORA worksheet for classification as a sex offender. In short, the defendant cannot have it both ways. He cannot protest his innocence while pleading guilty by way of an Alford-Serrano plea and then claim that no consequences or conditions subsequent to the plea should apply to him.
THE HIV TEST
The defendant opposes the request that he undergo an HIV test on the grounds that such a test (1) violates his constitutional rights as an unreasonable search and seizure under the Fourth Amendment of the Constitution of the United States (NY Const, art I, § 12); (2) constitutes retroactive punishment and is violative of the Ex Post Facto Clause of the United States Constitution; and (3) that the request was not made by the "victim” as that term is defined in CPL 390.15 as the defendant never admitted his guilt.
1. CPL 390.15
CPL 390.15 took effect on August 1, 1995 and was to apply to all persons convicted and adjudicated after that date (L 1995, ch 76, § 5). Under the law, where a defendant is "convicted of a felony offense enumerated in any section of article one hundred thirty of the penal law” and where "sexual intercourse” or "deviate sexual intercourse” was an element of the crime for which the person was convicted, "the court must, upon a request of the victim, order that the defendant submit to human immunodeficiency (HIV) related testing” (CPL 390.15 [1] [a] [emphasis added]). The court-ordered test must then be performed within 15 days of the order (CPL 390.15 [5]).
*447 A "victim” is the "person with whom the defendant engaged in an act of sexual intercourse or deviate sexual intercourse” (CPL 390.15 [1] [b]). The victim must file the request in writing with the court prior to a conviction or within 10 days after the entry of the defendant’s conviction, unless the court allows it to be filed late for good cause shown at any time before sentence is imposed (CPL 390.15 [2]). Additionally, the statute allows a representative of the victim to request the HIV test if the victim is an infant or incompetent person (CPL 390.15 [4]). The court is further directed to conduct a hearing "only if necessary to determine if the applicant is the victim of the offense of which the defendant was convicted” (CPL 390.15 [5]).
There has been only one New York reported decision discussing CPL 390.15. In that case Judge Daniel Palmieri of the Nassau County Court held that the statute was constitutional and that the defendant had to submit to an HIV test in a case where a defendant who was indicted for rape and sodomy in the first degree (Penal Law § 130.35 [1]; § 130.50 [1]), but pleaded guilty to attempted sexual abuse in the first degree (Penal Law §§ 110.00, 130.65 [1]) even though the crime for which he was now convicted did not have "an act of sexual intercourse * * * [as] an essential element in its commission” (People v Doe, 169 Misc 2d 29, 31 [Nassau County Ct 1996]; see also, Alden, Judge Finds New Law Permits HIV Testing, NYLJ, Apr. 4, 1996, at 1, col 5).
2. HIV Tests
AIDS (acquired immune deficiency syndrome) is a result of HIV, a retro virus (attaches itself to the host cell’s reproductive machinery) that enters the immune system and gradually renders the immune system inoperative. Two tests are used to determine if a person is HIV "positive”, the enzyme-linked immunosorbent assay (ELISA) test and the Western Blot test. Neither of the tests actually detects HIV, but detects the presence of antibodies which form in reaction to HIV. Standard practice is to use the less reliable, but less expensive ELISA test first and to re-test every positive ELISA result with the Western Blot confirmatory test. Since the test examines for the presence of antibodies rather than the virus itself, there is generally a 3-to-12-week delay after exposure before either test will give a positive result. However, some individuals infected with HIV will even show a negative test result even after 12 weeks. By six months the HIV antibodies will appear in virtually every case (see, Note, AIDS and Rape: The Constitutional *448 Dimensions of Mandatory Testing of Sex Offenders, 76 Cornell L Rev 238 [1990]; Johnetta J. v Municipal Ct., 218 Cal App 3d 1255, 267 Cal Rptr 666, 670 [1990]).
3. The Taking of a Blood Sample is Not an Unreasonable Search or Seizure
While it is clear that an intrusion into the body for blood is clearly a search under the Fourth Amendment, the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable (Skinner v Railway Labor Executives’ Assn., 489 US 602 [1989]; Johnetta J. v Municipal Ct., 218 Cal App 3d 1255, 267 Cal Rptr 666, 676, supra). Whether or not a search is reasonable "is judged by balancing its intrusion on the individuals’s Fourth Amendment interests against its promotion of legitimate governmental interests” (Delaware v Prouse, 440 US 648, 654 [1979]).
What is reasonable " 'depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.’ ” (Skinner v Railway Labor Executives’ Assn., 489 US, supra, at 619.) For searches outside the purely criminal context, the United States Supreme Court has developed the "special needs” test (supra). In situations where there "[is a] 'special need[ ], beyond the normal need for law enforcement,’ ” then a warrant and probable cause analysis is impracticable (supra). Under the special needs doctrine a search is not deemed unreasonable if the government’s interest outweighs the individual’s interest in avoiding the search. Therefore, if the government’s interest in ordering the HIV test outweighs the individual’s interest in not taking the test, the search is reasonable (Matter of Juveniles A, B, C, D, E, 121 Wash 2d 80, 847 P2d 455 [1993]; Skinner v Railway Labor Executives’ Assn., 489 US, supra, at 619; Johnetta J. v Municipal Ct., 218 Cal App 3d 1255, 267 Cal Rptr 666, 677-678, supra).
The testing procedure is a civil not a criminal procedure. Much like a civil action, the victim, not the prosecutor on behalf of the State of New York, is seeking a private remedy against the defendant. No one, other than the victim and defendant have a right to know the results of the test. The test results are not being sought as evidence against the defendant, or to enhance the level of the crime, or to give the defendant a longer sentence. The test is being done solely for the benefit of the victim’s health. Accordingly, HIV testing under CPL 390.15 presents a "special need” for which this court must balance the government’s interest against that of the defendant *449 (Johnetta J. v Municipal Ct., 218 Cal App 3d 1255, 267 Cal Rptr 666, 681-682, supra; Matter of Juveniles A, B, C, D, E, 121 Wash 2d 80, 847 P2d 455, 460, supra).
THE BALANCING TEST
1. The Individual’s Interest in Avoiding the Test
Although the defendant argues that the disclosure of the test result could harm his reputation in the community, this argument must be weighed against the fact that the order of the court granting such a test and all related papers would be sealed by the court (CPL 390.15 [3]). Additionally, the test results are only given to the person making the application. The person making the request is only permitted to redisclose the information to her immediate family, guardian, physician, attorney and mental health provider (CPL 390.15 [6] [a] [ii]).[10]
Additionally, Public Health Law § 2783 provides for a civil penalty of up to $5,000 per occurrence for a violation of this statute, and a person who wrongfully discloses such information is guilty of a misdemeanor (Public Health Law § 2783 [1], [2]). Also, the same stigma which might attach to the defendant, unfortunately, could also attach to the victim and her family if they were to proliferate the fact that she had been sexually assaulted by an HIV-positive man (State of N. J. in interest of J.G., 289 NJ Super 575, 674 A2d 625 [1996]).
Secondly, it must be noted that the procedure itself in obtaining a blood sample is not " 'brutal’ ”, " 'offensive’ ” or " 'shock-ting] to the conscience’ ” (see, Breithaupt v Abram, 352 US 432, 435 [1957]). As the United States Supreme Court stated: "The blood test procedure has become routine in our everyday life. It is a ritual for those going into the military service as well as those applying for marriage licenses. Many colleges require such tests before permitting entrance and literally millions of us have voluntarily gone through the same, though a longer, routine in becoming blood donors” (Breithaupt v Abram, supra, at 436; People v Durham, 146 Misc 2d 913 [Sup Ct, Queens County 1990]).
*450 2. The Government’s / State’s Interest
a. The knowledge gained from the test
The defendant claims that the State’s, interest in obtaining the results of the HIV test is minimal as it will have no medical utility. Dr. Nedunchezian, a physician associated with the St. Vincent’s Hospital AIDS Center, stated, in an affidavit appended to the motion, that although immediate compulsory testing of a defendant accused of a crime involving sexual intercourse would assist in treating the victim, it is not helpful in this case. He states that while someone can immediately upon infection receive a series of treatments which would prevent the seroconversion process, no such benefit would occur here. The doctor also states that "nearly all persons infected by HIV will test positive” within six months of infection by the virus. Additionally, the doctor states that in some "isolated cases” the seroconversion process can take as long as one year. Therefore, the doctor concludes that only during this seroconversion "window” of six months to a year is there a "great medical utility” to know whether or not the defendant was infected with the HIV virus.
In the case at bar, the alleged incidents occurred more than 21h years ago. Therefore, the doctor concludes, the only reliable test is one which would be performed on the victim herself and that a test on the defendant at such a late date does not have any medical utility. While this court may agree that scientifically an HIV test of the defendant taken 21h years after the alleged rape may have limited utility, there is no provision to direct the victim to take an HIV test as that would prove to be more relevant to the victim. However, some courts have concluded that "[t]he fact that the test of the assailant’s blood would not be conclusive does not defeat the government’s interest” (Johnetta J. v Municipal Ct., 218 Cal App 3d 1255, 1281, 267 Cal Rptr 666, 682, supra; see also, Government of Virgin Is. v Roberts, 756 F Supp 898 [Virgin Is 1991]).
"At issue is the balancing of the rights of privacy and confidentiality of the infected person with the unknowing person’s right to know in order to be tested and treated, along with society’s right to stop the spread of HIV” (this Justice’s prior decision in People v Pedro M., 165 Misc 2d 710, 716 [Crim Ct, Kings County 1995]).
b. Legislative history
The New York HIV testing statute has minimal legislative history. It consists of a brief memorandum in support of the *451 bill (Mem of Assembly in Support, 1995 McKinney’s Session Laws of NY, at 1872). The memorandum indicates two justifications for the bill’s passage: (1) to obtain Federal anti-drug funding (see, 42 USC § 3756 [f] [2], [3]; 18 USC § 2246 [2] [A], [B]); and (2) that it would lessen the trauma for victims who are seeking this information. This is similar to New Jersey, where the statute’s legislative history consisted of a report stating that if such a statute was not passed they would lose 10% of their Federal grant money. However, in State of N. J. in interest of J.G. (289 NJ Super 575, 588, 674 A2d 625, 631, supra) the court still held that "[t]he state’s interest in obtaining information of the HIV status of accused or convicted sex offenders is readily apparent” namely to: (1) protect the rights of the victim; (2) ease the victim’s anxiety; (3) may propel the victim to monitor his/her own status; and (4) the State’s own interest in the health and safety of its citizens.
In Florida, the HIV testing statuté requires that the court order the defendant to undergo an HIV test upon the request of the victim whenever the defendant is charged by an information or indictment of an offense involving the transmission of body fluids (Fla Stat Annot § 960.003). In a case decided by the Fourth District Florida Court of Appeal in Fosman v State (664 So 2d 1163, 1165-1166 [1995]), the court quoted the Illinois Supreme Court which held that: " '[t]here are few, if any, interests more essential to a stable society than the health and safety of its members. Toward that end, the State has a compelling interest in protecting and promoting public health and, here, in adopting measures reasonably designed to prevent the spread of AIDS * * * Once persons who are carriers of the virus have been identified, the victims of their conduct and the offenders themselves can receive necessary treatment, and, moreover, can adjust their conduct so that other members of the public do not also become exposed to HIV. In this way, the spread of AIDS through the community at large can be slowed, if not halted. We believe that the HIV testing requirement advances a special governmental need’ ” (People v Adams, 149 Ill 2d 331, 597 NE2d 574 [1992]).
This court holds that the government’s interests clearly outweigh the defendant’s right to privacy in this matter. Accordingly, the testing of his blood is not an unreasonable search and seizure.
*452 4. Enforcement of Ex Post Facto Law
The defense claims that this law would violate the prohibition of enforcement of ex post facto laws contained in article I, § 10 of the US Constitution.
The United States Supreme Court has held that the constitutional prohibition on ex post facto laws only applies to "penal statutes which disadvantage the offender affected by them” (Collins v Youngblood, 497 US 37, 41 [1990]). Additionally, the Supreme Court has held that "procedural” changes, even though they can disadvantage the accused, do not violate the Ex Post Facto Clause (supra, at 45).
The defendant states that the statute is penal in nature based on his fear that the victim’s family would proliferate the results of the test in the community and hurt his reputation. It must be said that the defendant’s fear is not unwarranted as the victim’s family did place signs concerning the arrest of the defendant in areas of Staten Island where the defendant works and resides.
In People v McVickers (4 Cal 4th 81, 840 P2d 955 [1992]) the California Supreme Court en banc held that mandatory AIDS testing did not violate the Ex Post Facto Clause of the Constitution. The court’s rationale was that a blood test is hardly "punishment” since such tests have become routine in our lives and the procedure involves no risk, trauma, or pain. "Whatever slight discomfort or inconvenience [the] defendant might experience from the drawing of blood does not rise to the level of punishment” (4 Cal 4th 81, 88, 840 P2d 955, 959-960, supra). Likewise, in People v Doe (169 Misc 2d 29, 39, supra) the Nassau County Court held that the Ex Post Facto Clause was not violated since "the statute is intended, not to punish, but to accomplish another legitimate governmental purpose — to ease the trauma of [the] victim of a sex crime with respect to the HIV related disease” (see also, Gilbert v Peters, 55 F3d 237 [7th Cir 1995]).
Accordingly, this court finds that the HIV testing statute does not violate the Ex Post Facto Clause of the Constitution.
5. The Victim’s Request for HIV Test
Here the defendant is convicted of rape in the third degree (statutory rape) and his daughter is the "victim”. The defense states that since there is no evidence that the defendant had sexual relations with his daughter and maintains that he is innocent of the crime there is no "victim”. This is *453 clearly not the case. This court’s discussion of the ramifications of the Alford-Serrano plea discussed above is equally applicable here. The victim’s request made as part of a motion by the People will be treated as made on behalf of the victim.
CONCLUSION
Therefore, this court holds that the Sex Offender Registration Act Risk Assessment Instrument points allocated against the defendant for failure to take responsibility were proper. Moreover, the request that the defendant be tested for HIV is permissible and constitutional.
Accordingly, the defendant’s motion is denied.
[Portions of opinion omitted for purposes of publication.

. North Carolina v Alford, 400 US 25 (1970); People v Serrano, 15 NY2d 304 (1965).

. The victim on the day of sentencing withdrew the request. However, an analysis of the issues may be of assistance to the Bar.

. However, in Doe v Pataki (940 F Supp 603 [SD NY 1996]), Judge Chin of the United States District Court for the Southern District of" New York declared the public notification provisions unconstitutional as applied to crimes committed before the Act was passed as they violate article I, § 10 of the US Constitution, which prohibits enforcement of ex post facto laws. The registration requirements were upheld, however, because they were regulatory and not punitive (but see, People v Afrika, 168 Misc 2d 618 [Sup Ct, Monroe County 1996]; see generally, Alden, Megan’s Law Application Cut Back Again, NYLJ, Sept. 25, 1996, at 1, col 6; Rudin, Megan’s-Law — Can it stop sexual predators — and at what cost to Constitutional rights% 11 Grim Just 3 [fall 1996]).

. The point values under category 1 are: used forcible compulsion (10); inflicted physical injury (15); armed with a dangerous instrument (30); sexual contact was over clothing (5); sexual contact was under clothing (10); sexual intercourse, deviate sexual intercourse or aggravated sexual abuse with victim (25); two victims (20); three or more victims (30); continuing course of sexual misconduct with at least one victim (20); victim was 11 through 16 years old (20); victim was 10 years old or less or 63 years old or more (30); victim suffered a mental defect, mental incapacity or physical helplessness (20); victim was a stranger (20); or the crime was promoted for the primary purpose of victimization or arose in the context of a professional relationship (20).

. The point values under category 2 are: age at first sex crime was 20 or less (10); prior criminal history, but no sex crimes or felonies (5); prior felony conviction, but not a violent felony, or sex crime (15); prior conviction for a violent felony, misdemeanor sex crime or endangering the welfare of a child (30); prior conviction for a felony or sex crime was less than three years before the instant offense (10); or history of drug or alcohol abuse (15).

. The point values under category 3 are: offender has not accepted responsibility for sexual misconduct (10); offender has not accepted responsibility for sexual misconduct and has refused or been expelled from treatment (15); offender’s adjustment to confinement or supervision has been unsatisfactory (10); or offender’s adjustment to confinement or supervision has been unsatisfactory and has included sexual misconduct (20).

. The point values under category 4 are: offender will be released with specialized supervision (0); offender will be released with supervision (5); of *445 fender will be released without supervision (15); or offender’s living or employment situation is inappropriate (10).

. The court had originally assessed the defendant 15 points for a past history of alcohol/drug abuse. However, the defendant has been alcohol and drug free for 12 years, was remarried, had children by his second marriage and was given custody over his niece and was actively engaged in a productive business. Since the defendant appeared to have been rehabilitated from his 12-year-old alcohol and drug problem he should not be penalized into perpetuity for such previous conduct. Accordingly, the court recommended a deviation from the guidelines by classifying the defendant as a level 1 offender.

. Under Public Health Law § 2782 (1) "[n]o person who obtains confidential HIV related information in the course of providing any health or social service or pursuant to a release of confidential HIV related information may disclose or be compelled to disclose such information” (see also, 10 NYCRR 63.4).