**<u>NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER</u>**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000436
26-JAN-2024
07:51 AM
Dkt. 150 SO**

NO. CAAP-21-0000436

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

TERI LYNN JENSEN PHILLIPS, Plaintiff-Appellee,
v.
LEWIS BENJAMIN EUGENE PHILLIPS, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(CASE NO. 3DV19100218K)

<u>SUMMARY DISPOSITION ORDER</u>
(By:  Leonard, Acting Chief Judge, Wadsworth and Guidry, JJ.)

Defendant-Appellant Lewis Benjamin Eugene Phillips

(**Husband**) appeals, self-represented, from the Decree Granting

Absolute Divorce (**Divorce Decree**) filed on July 6, 2021 and

amended on July 1, 2022 by the Family Court of the Third Circuit

(**family court**).[1]

---

[1]    The Honorable Mahilani E.K. Hiatt presided over entry of the July 2021 Divorce Decree.  The Honorable Kimberly B. Taniyama presided over entry of the July 2022 Amended Divorce Decree.

Husband raises three points of error on appeal. From what we are able to discern,[2] Husband contends that the family court erred: (1) by failing to allow him a continuance "to obtain substitute and effective counsel"; (2) "in failing to recognize the procuring of [his] agreement at mediation was the result of grossly ineffective assistance of counsel, the appearance of collusion between counsels and the mediator, and [his] detrimental reliance upon erroneous facts and information"; and (3) in entering the Divorce Decree because "the decree and property settlement resulting from mediation are patently unconscionable, one-sided and inequitable, [and] the result of duress and unfair surprise[.]"

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we affirm.

## I.    Background

Husband and Plaintiff-Appellee, Teri Lynn Jensen Phillips (**Wife**), were married on August 3, 2004.  On December 9, 2019, Wife filed a complaint seeking a divorce.  Husband and

---

[2]    This court granted Appellee's Motion to Strike Husband's December 3, 2021 Opening Brief, and December 6, 2021 Schedule of Points and Error; Husband's September 23, 2022 Amended Opening Brief (**Amended Opening Brief**) is the operative opening brief in this appeal.  The Amended Opening Brief is non-compliant with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b) in various respects.  We apply a liberal interpretation to pleadings prepared by self-represented litigants, so as not to foreclose them from appellate review for failure to comply with court rules.  See Erum v. Llego, 147 Hawaiʻi 368, 380-81, 465 P.3d 815, 827-828 (2020).  The arguments Husband raises in his Amended Opening Brief are thus addressed to the extent discernible.

Wife have no children together, and this matter solely involves the division of Husband and Wife's marital assets and debts.

Prior to the court granting the Divorce Decree, Husband and Wife participated in mediation on January 26-27, 2021.  Husband was represented by attorney Christopher Eggert, Esq. (**mediation counsel**) at the mediation.  The record reflects that the parties reached agreement to the terms of a mediated settlement agreement (**Mediation Agreement**).  Husband assented to the terms of the Mediation Agreement at the mediation proceeding.  However, Husband subsequently refused to sign the proposed Divorce Decree that incorporated the terms of the Mediation Agreement.  Husband's mediation counsel filed a Motion to Withdraw as Counsel (**Motion to Withdraw**), representing that the relationship between Husband and mediation counsel had "irrevocably broken down."  The court heard the Motion to Withdraw on March 29, 2021, and granted mediation counsel's request to withdraw.

At the hearing on the Motion to Withdraw, Husband informed the family court that he had already retained William Reece, Esq. (**Reece**) as his new attorney going forward,

> MR. OLSON [Wife's counsel]: . . . If Mr. Phillips does retain another attorney, if that attorney would contact me and I will be happy to discuss this matter with him.
>
> MR. PHILLIPS: Already been hired.
>
> MR. OLSON: And who is that, sir?
>
> MR. PHILLIPS: William.

3

THE COURT: Is that the first name or the last name?

MR. PHILLIPS: First name. I'm sure he knows who he is. He's a criminal justice attorney. Okay. All right. I don't have his last name memorized.

THE COURT: Is he an attorney here in Kailua-Kona, sir?

MR. PHILLIPS: Yes, on the Big Island.

THE COURT: Is it William Reece, R-E-E-C-E?

MR. PHILLIPS: William Reece.

THE COURT: Okay. So if you have retained Mr. Reece, I think that that answers Mr. Olson's question. In which case, Mr. Olson will only be communicating with your attorney, just because you now are represented. So he wouldn't be having direct contact with you. I guess, Mr. Olson, you will reach out to Mr. Reece then?

MR. OLSON: Yes, I will write him a letter and give Mr. Reece this April 15th deadline. Just to be clear, April 15th deadline, that's to reach a written agreement. It's not just to respond what's wrong with the agreement. So I expect a prompt response, and I would like to have, if there is going to be any agreement, be memorialized by the 15th.

THE COURT: Okay. Well, hopefully, if you reach out to Mr. Reece that you can get the ball rolling in that direction, Mr. Olson.

Despite his representation to the family court and Wife's counsel, it appears that Husband had not in fact retained Reece. Husband proceeded self-represented during the remainder of the family court proceedings.

The family court continued the matter to April 29, 2021, at which time it heard Wife's Motion to Enforce Settlement Agreement (**Motion to Enforce**). At the evidentiary hearing on the Motion to Enforce, the family court accepted the video and audio recording from the mediation into evidence without objection from Husband. Husband submitted no written argument

4

and presented no evidence, but was permitted by the family court to present his argument at the hearing as follows,

> THE COURT: Thank you. Mr. Phillips, anything you want to say with respect to the motion to enforce the settlement agreement?
>
> The Court would note that there was no memo filed in opposition, but I will give you an opportunity now, if you want to make your argument.
>
> MR. PHILLIPS: I would certainly appreciate that, and thank you.
>
> THE COURT: Okay.
>
> MR. PHILLIPS: My response will only take one to two minutes of the Court's time.
>
> I have it written down, so please bear with me if the grammar doesn't come through appropriately. But before I can answer, I need to reveal a few things.
>
> My current lawyer has not communicated successfully to me. The last conversation was several weeks back, with him informing me as to additional fees being required to take on my case.
>
> This required a discussion with Christopher Eggert, which I can only assume that they had a discussion.
>
> Here is what I believe may be a possible Big Island lawyer nepotism occurring. That's my opinion. The Court can ignore it, if you want.
>
> I feel I must contain [sic] an off-island Kaua[ʻ]i attorney, who will not be prejudiced in any way with regards to the mediation dialogue and divorce.
>
> I beg for a continuance to discover this attorney so that they can continue with the answer, but I will continue with what I have written down. Then you may answer at will.
>
> My last Covid shot will be May 2nd, just for information purposes only, and the next time (indiscernible) will be in court, I would prefer to be in court in personal attendance.
>
> Mediation was asked by your Honor on the original predecree relief hearing. Both counsels answered yes. I have it in writing where I would have preferred to have gone to court, but mediation was not my preferred course of action.

Because I was told by Mr. Eggert to keep quiet and (indiscernible) from your Honor, I could not voice my concerns for this during the court hearing.

I was blind-sided in the mediation by what is called a Category --

THE COURT: Go ahead, sir. How much more time do you need?

MR. PHILLIPS: Another minute.

THE COURT: Okay.

MR. PHILLIPS: **I was blind-sided by what is called a Category 3, which I can prove without a shadow of a doubt that this does not apply to me. I attempted to settle under false pretenses.**

My attorney did not give me ample time during the meeting and was more concerned with leaving the meeting to work with other client's problem on my dime.

I had a home equity loan with (indiscernible) Federal Credit Union on a (indiscernible) with that both of our names were on property, completely excluded altogether in the mediation process.

She wishes to return to her motion to her state home to (indiscernible) items after the sale of that home, all of which were brought from Alaska.

This was my choice to make a home for me -- by her. Excuse me. This was her choice to make home with me in New York state. My second home in Hawaiʻi was on --

**THE COURT: Mr. Phillips, what I want to hear is any objection to the motion to enforce the settlement agreement.**

MR. PHILLIPS: Yes.

**THE COURT: That's what's before the Court now. Can you address the motion, please? This is just saying you don't agree to what happened. I want to know specifically why you think the Court should not enforce the settlement agreement, please.**

**MR. PHILLIPS: That I was -- coerced, I guess. That I was blind-sided, and that there was property that was completely out of the mediation agreement. And I also did not wish to go to a mediation. I don't know how to answer that for you, your Honor.**

THE COURT: Okay. I think because you are unable to answer that and provide any evidence of that.

So, Mr. Olson, any further argument or can the Court go ahead and rule?

MR. OLSON: I would ask the Court to go ahead and rule.

(Emphasis added.)

After hearing Husband's argument, the family court orally granted Wife's Motion to Enforce. The family court explained the basis for its enforcement of the Mediation Agreement as follows,

[I]t is crystal clear to the Court that both parties were represented by counsel, certainly during the mediation, as well as the recording that the Court watched in full, in which Mr. Peters, Daniel Peters, the mediator, neutral mediator who facilitated the mediation put on the record specifically all of the terms of the settlement agreement. It was clear, plain and unambiguous.

. . . .

You [Husband] have presented no evidence of any fraud, misrepresentation, concealment, coercion, being blind-sided or any other misleading incidents.

The Court would note that **you [Husband] were attentive during the entire recording, that at the end of it in response to Mr. Peters' questions you indicated verbally affirmatively that you understood the allocation of the debts and the assets, quote, "exactly what we discussed," quote, "yes, let [sic] make this divorce happen." You gave a thumbs up at the end of the recording.**

(Emphasis added.)

The family court entered its Order Granting Plaintiff Teri Lynn Jensen Phillips's Notice and Motion to Enforce Settlement Agreement and for Attorneys [sic] Fees on June 16, 2021, and the Divorce Decree on July 6, 2021. The Divorce Decree memorialized the terms of the mediation agreement.[3]

_____

[3] Husband did not appeal the family court's Order granting the Motion to Enforce. He appealed from the Divorce Decree. On June 7, 2022, (continued . . .)

7

We address Husband's three contentions of error in turn.

## II.  Discussion

### A. Husband's Request for a Continuance

Husband contends that the family court erred by failing to allow him a continuance "to obtain substitute and effective counsel."  We review the family court's ruling under the abuse of discretion standard.

> [T]he family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion.  Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawaiʻi 183, 189-90, 20 P.3d 616, 622-23 (2001)).

At the outset, we note that Husband represented to the family court, at the March 29, 2021 hearing on the Motion to Withdraw, that he had retained new counsel.  The family court proceeded on Husband's representation that he was being represented by attorney Reece.  Husband appeared self-

---

(. . . continued)
this court issued an "Order for Temporary Stay and Temporary Remand" to the family court because the Divorce Decree was not "final and appealable because it provides that it 'shall not be effective and shall have no legal effect whatsoever until it is signed by both parties,' but does not reflect the parties' signatures."  The family court filed an Amended Decree Granting Absolute Divorce (**Amended Divorce Decree**) on July 1, 2022.

represented, however, at the April 29, 2021 hearing on the Motion to Enforce.

While Husband requested a continuance at the Motion to Enforce, purportedly to retain "an off-island Kaua[ʻ]i attorney" due to "Big Island lawyer nepotism," the record reflects that he presented argument at the hearing. In response to the family court's question as to "why you think the Court should not enforce the settlement agreement," Husband alleged that he was "coerced," "blind-sided," "that there was property that was completely out of the mediation agreement[,]" and that he "also did not wish to go to a mediation." The family court noted the lack of evidence to support those allegations.

We conclude, on this record, that the family court did not abuse its discretion by not continuing the hearing on the Motion to Enforce.

## B. Husband's Allegations of Ineffective Assistance of Counsel, Collusion, and Detrimental Reliance

Husband contends the family court "erred in failing to recognize the procuring of [his] agreement at mediation was the result of grossly ineffective assistance of counsel, the appearance of collusion between counsels and the mediator, and [his] detrimental reliance upon erroneous facts and information as to applicable law under the facts." Husband contends, without identifying any supporting evidence, "that but-for the restrictions of COVID, the imposed remote litigation scenario

9

outlined above,[4] and the imperative nature of counsel's inaccurate advice, [Husband] would have never allowed such an obviously unfair settlement to have occurred."

We construe Husband's contention of ineffective assistance of counsel as a contention that his mediation counsel's alleged ineffectiveness, and his mistaken reliance on counsel's advice, caused him to enter into an unfavorable Mediation Agreement. Husband thus appears to have sought, on this basis, a unilateral recission of the Mediation Agreement. Husband does not point to any evidence that would support his allegations of ineffective assistance, "collusion" between counsel and the mediator, or his "detrimental reliance" on "erroneous facts and information" provided to him by counsel.

At the outset, we note that "[t]he family court in divorce cases must enforce all valid and enforceable premarital agreements, marital agreements, and/or divorce agreements." Epp v. Epp, 80 Hawaiʻi 79, 88, 905 P.2d 54, 63 (App. 1995); see also Hawaii Revised Statutes (**HRS**) § 572-22(c) (Supp. 2021) ("All contracts made between spouses, whenever made, whether before or after June 6, 1987, and not otherwise invalid because of any other law, shall be valid.").

---

[4]     The record reflects that the mediation proceedings were conducted remotely during the COVID-19 pandemic, and that the mediator, Husband, Wife, and Husband and Wife's respective counsel appeared at the video conference. The family court hearing on the Motion to Withdraw was conducted remotely, with all parties appearing via Zoom. The hearing on the Motion to Enforce was conducted in-person, but Husband was permitted to appear via Zoom.

Contrary to Husband's contention that he was not a willing participant in mediation, the record reflects his active and affirmative participation at the mediation proceeding and his verbal consent to the terms of the Mediation Agreement. The recording of the mediation proceeding, which was introduced into evidence and viewed by the family court at the hearing on the Motion to Enforce, shows that Husband nodded his head several times, raised issues, and expressly agreed to the allocation of assets and debts as being "exactly what we discussed." Husband affirmatively represented to the mediator that he understood the terms of the Mediation Agreement that he was entering into. We find no evidence in the record that Husband objected to the mediation proceeding, or that he was unsatisfied with his counsel's assistance or advice during the mediation proceeding.

Moreover, the record does not support a contention that Husband's active and affirmative participation during the mediation resulted from his "detrimental reliance" on "erroneous facts or information" presented during the course of the mediation proceeding. Husband's conclusory allegations to the family court below, that "[the] entire recording [of the mediation proceeding] is moot, because I never wished to go to mediation, and [Husband's mediation counsel] had fired a whole bunch of stuff at me the day before, which I had no idea what any of it meant[,]" are not supported by the record. In the absence of any supporting evidence, Husband presents no

11

discernible argument of ineffective assistance or detrimental reliance.  See In re Guardianship of Carlsmith, 113 Hawaiʻi 236, 246, 151 P.3d 717, 727 (2007) ("[An appellate] court may disregard a particular contention if the appellant makes no discernible argument in support of that position.") (cleaned up).  We conclude that the family court did not err in enforcing the Mediation Agreement through entry of the Divorce Decree.

**C. Husband's Allegations of Unconscionability**

Husband contends on appeal that the Divorce Decree was "unconscionable, one-sided and inequitable, [and] the result of duress and unfair surprise," claiming that he did not voluntarily and knowingly enter into the Mediation Agreement.  "Unconscionability is a question of law this court reviews de novo."  Balogh v. Balogh, 134 Hawaiʻi 29, 37, 332 P.3d 631, 639 (2014).

Even assuming that Husband properly preserved his argument that the Divorce Decree is unconscionable, one-sided, and inequitable,[5] his argument lacks merit.  Husband relies entirely on Balogh to support his contention of unconscionability.  The Balogh court, in recognizing that "the

---

[5]     Husband argued below, without any supporting evidence, that he was "blind-sided" and "attempted to settle under false pretenses."  He did not specifically contend at the hearing on the Motion to Enforce that the Mediation Agreement was "unconscionable."  "Legal issues not raised in the trial court are ordinarily deemed waived on appeal."  Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort, Co., Ltd., 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002).

family court must enforce all valid and enforceable postmarital

and separation agreements[,]" explained that,

> [S]pouses may expressly contract for a different division of marital partnership property, and the family court must enforce all valid and enforceable agreements with regard to marital property division.  *See* HRS § 572-22 (2006) ("All contracts made between spouses . . . not otherwise invalid because of any other law, shall be valid.")[.]
>
> . . . .
>
> **A postmarital or separation agreement is enforceable if the agreement is not unconscionable and has been voluntarily entered into by the parties** with the knowledge of the financial situation of the other spouse.
>
> . . . .
>
> Unconscionability encompasses two principles: one-sidedness and unfair surprise.  One-sidedness (i.e., substantive unconscionability) means that the agreement leaves a post-divorce economic situation that is **unjustly disproportionate**. Unfair surprise (i.e., procedural unconscionability) means that **one party did not have full and adequate knowledge of the other party's financial condition when the marital agreement was executed.  A contract that is merely inequitable is not unenforceable.**

Id. at 39-41, 332 P.3d at 641-43 (cleaned up) (emphasis added).

Husband's contentions of unconscionability, unfair

surprise, and "one-sidedness" are not supported by the record.

The record shows that, pursuant to the terms of the Mediation

Agreement, real and personal property were divided between

Husband and Wife.  Debts were also allocated between Husband and

Wife.  Both Husband and Wife separately approved, at the close

of the mediation proceeding, the agreed-upon division of

property and debts outlined by the mediator.  Husband does not

demonstrate that the terms of the Mediation Agreement were

"unjustly disproportionate," or that he "did not have full and

13

adequate knowledge of [Wife's] financial condition" at the time of mediation.

Moreover, Husband's contention that the Mediation Agreement was reached under duress is not supported by the record evidence. In the absence of any supporting evidence, we cannot conclude that the family court erred in enforcing the Mediation Agreement through entry of the Divorce Decree.

On this record, we conclude that the family court did not err in enforcing the terms of the Mediation Agreement through its entry of the Divorce Decree.

### III. Conclusion

For the foregoing reasons, the Family Court of the Third Circuit's Decree Granting Absolute Divorce, filed on July 6, 2021 and amended on July 1, 2022, is affirmed.

DATED: Honolulu, Hawai'i, January 26, 2024.

On the briefs:

Lewis Benjamin Eugene Phillips,
Self-represented
Defendant-Appellant.

Peter S.R. Olson,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge