19943

The STATE, Respondent, v. David Earl THOMPKINS and Clairborne C. Clarke, Appellants

(211 S. E. (2d) 549)

*Walter Bilbro, Jr., Esq.,* of Charleston, *for Appellants,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Joseph R. Barker, Staff Attorney,* of Columbia, and *A. Arthur Rosenblum, Asst. Sol.,* of Charleston, *for Respondent,*

January 15, 1975.

Lewis, Justice:

Appellants were convicted of exhibiting obscene motion pictures at the Chateau Theatre, in Charleston County, South Carolina, in violation of the State's obscenity statutes, Section 16-414.1 *et seq.*, 1962 Code of Laws, as amended. This appeal from their conviction and sentence challenges, in general, the admission of the motion pictures into evidence, the constitutionality of the statutes under which they were convicted the denial of their motions for a directed verdict of not guilty, and the refusal of certain requested instructions to the jury.

The alleged offense occurred on October 7, 1973, with trial and conviction on December 14, 1973. The films in question ran for approximately one (1) hour each and show sex acts by nude men and women in various forms, including cunnilingus, fellatio, and lesbianism.

Two Charleston County police officers went to the Chateau Theatre on October 7, 1973, paid the admission price and viewed the complete showing of the two movie films in question. The next morning, October 8th, one of the officers obtained a search warrant from a neutral Charleston County magistrate authorizing the seizure of "two or more reels of obscene motion pictures as fully described in the attached affidavit." The affidavit upon which the search warrant was issued, admittedly, contained an accurate, detailed description of the films including a full statement of the action and conduct shown. The search warrant was served on the same day and, upon request of the officers, appellants surrendered the films shown and observed by the officers on the previous day. Neither the affidavit nor the search warrant gave the names of the films to be seized. The return upon the warrant, however, shows that the property seized was: (2) two 16 mm reels and film. One titled 'The Kidnappers,' one titled the 'Dirty Movie Makers'." Prior to the execution of the search warrant, an

arrest warrant was obtained for one Albert Peloquin whom they assumed to be the manager of the theatre. The arrest warrants for appellant were subsequently obtained and served.

Appellants made a pretrial motion to suppress the two seized films as evidence. The motion was denied and the films were admitted into evidence over appellants' objections. While appellants allege that this motion to suppress was not timely considered by the trial judge, the issues sought to be raised under the motion were considered by the court at subsequent stages of the trial and are preserved on appeal. Therefore, no prejudice resulted.

It is contended that the films were improperly admitted into evidence because: (1) the search warrant was defective for failure to particularly describe the property to be seized; (2) no hearing was held out of the presence of the jury to determine whether the warrant had been properly issued; (3) the State failed to establish the chain of custody of the films from the time of seizure to trial so as to properly identify them; and (4) the seizure provisions of Section 16-414.7 failed to comply with the constitutional requirements set forth in the cases of *Roaden v. Kentucky,* 413 U. S. 496, 93 S. Ct. 2796, 37 L. Ed. (2d) 757 and *Heller v. New York,* 413 U. S. 483, 93 S. Ct. 2789, 37 L. Ed. (2d) 745.

The contention that the search warrant lacked sufficient particularity in the description of the property to be seized is based upon the fact that the title of the films was not stated in the warrant. Although appellants argue that no affidavit was attached to the warrant served, the record conclusively shows that it was and that it was considered by the magistrate before the warrant was issued.

The affidavit, which was a part of the search warrant, left no doubt as to the films to be seized. It included a description of the plots of the films, the names of the characters, and a recital of the patently obscene sexual

conduct sought. Certainly, appellants had no difficulty in determining what films were sought because they voluntarily, at the request of the officers, surrendered the films which the affidavit recited had been shown at the theatre on the previous evening; and which were obviously the only films that could have been included within the reach of the search warrant. The fact that the title to the films was not stated in the warrant did not render any less definite the identity of the films, in view of the detailed description of the contents and the description in the affidavit as those shown at the theatre on the previous evening.

The affidavit attached to the search warrant described the property to be seized with sufficient particularity and appellants' contention to the contrary is without merit.

Neither is there merit in the position that the trial judge should have held an evidentiary hearing out of the presence of the jury to determine whether the search warrants had been properly issued. A pretrial hearing was held on the motion to suppress, at which time, although witnesses were not examined, appellants were permitted to fully argue their objections. The court had before it the affidavit upon which the search warrant was issued, which clearly showed probable cause for its issuance. Since the affidavit showed probable cause, the search warrant issued pursuant thereto afforded ample legal authority for the seizure of the property described therein and its admission into evidence. A further evidentiary hearing was not required under the present facts. See: *State v. York,* 250 S. C. 30, 156 S. E. (2d) 326.

It is additionally argued that the films should have been excluded from evidence because the State failed to establish the chain of custody from seizure to the time of trial so as to properly identify them. The conclusive answer to this contention is that there was no issue as to the identity of the films introduced into evidence. The appellants admitted that they were the films shown at the

theatre on the date in question. No other films were involved.

Finally, the admissibility of the films is attacked upon the ground that the seizure provisions of Section 16-414.7 fail to meet constitutional requirements, (set forth in *Roaden* and *Heller, supra*), first, in that there is no requirement that the officer who issues the search warrant view the materials alleged to be obscene or to examine them in any procedure to "focus searchingly" on the question of obscenity.

Section 16-414.7 authorizes the issuance of search warrants for obscene material and provides procedures for the prompt judicial determination of the obscenity issue after the alleged obscene material has been seized.

The seizure in this case and the statutory procedure under which it was carried out meet constitutional requirements. The films in question, were seized solely for evidentiary purposes and pursuant to a valid search warrant issued upon probable cause. Appellants rely upon the cases of *Roaden* and *Heller*. Such reliance is misplaced. *Roaden* held that an adversary hearing was not required prior to the issuance of a search warrant and *Heller* held that seizure of films for evidentiary purposes without a prior adversary hearing is constitutionally proper when (1) the seizure is pursuant to a search warrant issued after a determination of probable cause by a neutral magistrate and (2) a prompt judicial determination of the obscenity issue is available at the request of any interested party.

Section 16-414.7 meets the foregoing requirements.

The absence of a hearing after seizure to determine the obscenity issue was due to the failure of appellants to avail themselves of the statutory procedure and not to any constitutional deficiency in the statute.

Appellants attack the constitutionality of other provisions of Section 16-414.7, which (1) permit the seizure of obscene materials without a search warrant under certain

limited circumstances (Section 16-414.7 [b], (2) permit the owner of seized material to obtain a hearing on the obscenity issue by giving written notice to the judicial officer in possession thereof (Section 16-414.7 [d]), and (3) declare obscene matter to be contraband and that it shall be destroyed, after conviction, entry of plea of guilty or *nolo contendere* by the owner or person in custody of the material (Section 16-414.7 [e]).

The attacks upon the provisions mentioned in the preceding paragraph require very little discussion. The films were seized pursuant to a valid search warrant and the provisions dealing with seizure without a warrant are totally irrelevant to the present issues.

Under the provisions of 16-414.7(d), appellants were given the right to have the issue of obscenity determined upon a written request therefor. This met constitutional requirements. They were fully aware of the seizure of the films but failed to avail themselves of the hearing allowed by statute. In any event, no prejudice could have resulted to appellants from the absence of a hearing after seizure to determine the character of the present, patently obscene films.

The attack upon Section 16.414.7(e), relative to the destruction of obscene materials, is based upon a misconception of these statutory provisions. Instead of permitting destruction of obscene material without conviction, without allowing the right of appeal and without proper notice, as appellants contend, the statute provides that the material can only be destroyed after a conviction, or the entry of a plea of guilty or *nolo contendere* by the owner or custodian of the material. It follows that even ofter conviction, the material must be held until all appeals are exhausted. Upon conviction and exhaustion of the right of appeal, the obscene material may be destroyed as contraband without further notice.

After there has been a final legal determination that material is obscene, the owner thereof has no constitutional right to further notice before the destruction of such material as contraband.

Additionally, appellants challenge the constitutionality of the statutes in question "as being so vague that men of common intelligence must differ as to their application, as sweeping unnecessarily broadly, as having a chilling effect on interstate commerce, as being subject to arbitrary and capricious enforcement, as lacking procedural safeguards for the protection of nonobscene material, as providing powers of censorship in the form of prior restraints, in failing to provide the proper requirement of *scienter,* as defining obscenity solely as a factual question, in ignoring the entertainment value of the material, in failing to define the relevant geographical community for evaluation of obscenity, for failing to differentiate between possession in the home and possession elsewhere, (and) for failing to provide 'fair notice' as required by *Miller* (*Miller v. California,* 413 U. S. 15, 193 [93] S. Ct. 2607, 37 L. Ed. [2d] 419),'' in violation of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the applicable provisions of the State Constitution.

We construed these statutes in *State v. Watkins,* 262 S. C. 178, 203 S. E. (2d) 429, appeal dismissed, . . . . U. S. . . . ., 94 S. Ct. 3204, 41 L. Ed. (2d) 1157, as applying "to hard core sexual conduct, such as patently offensive representations of ultimate sexual acts, normal or perverted, actual or simulated; and such as patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." We also held that the statutory definition of obscenity did not violate the standards set forth in *Miller v. California, supra.*

Conformable with our statute and *Miller,* the trial judge instructed the jury:

"In determining whether or not the movies were obscene you, the jury, must find beyond a reasonable doubt the fol-

lowing: That the dominant theme of the movies, taken as a whole, appeals to the prurient interest of nudity, sex or excretion; that the movies are patently offensive, . . . because they affront the contemporary community standards relating to the description or representation of sexual matters; that the movies, taken as a whole lack serious literary, artistic, political or scientific value."

As construed in *Watkins* and applied in the trial of this case, the statute meets the constitutional standards set forth in *Miller, Hamling v. United States,* 418 U. S. 87, 94 S. Ct. 2887, 41 L. Ed. (2d) 590; and *Jenkins v. Georgia,* 418 U. S. 153, 94 S. Ct. 2750, 41 L. Ed. (2d) 642. These decisions sustain the statute against the claims of vagueness, overbreadth, censorship, and lack of due process; and further discussion of these grounds is unnecessary.

Only the claim that the statutory definition of *scienter* is constitutionally deficient requires further examination.

Code Section 16-414.2 makes it unlawful for any person to "knowingly" exhibit obscene matter; and Section 16-414.1 defines "knowingly" as "having knowledge of the contents of the subject matter or failing after reasonable opportunity to exercise reasonable inspection which would have disclosed the character of such subject matter."

The foregoing section establishes the constitutional requirement of *scienter* in order to convict of the offense. The innocent exhibition of obscene matter is not punished. Only those who *knowingly* exhibit such material violate the statute.

The term *knowingly* is defined as including, not only actual knowledge of the contents of the subject matter of the material, but also knowledge of its contents which could have been gained by reasonable inspection, when the circumstances are such as would have put a reasonable man on inquiry. One may be found to knowingly violate the statute when it appears that he shuts his eyes to avoid knowing what would otherwise be obvious.

Therefore, the statutory definition of *knowingly* includes, not only actual knowledge of the subject matter, but also situations where a person has such information, or the circumstances are such, as would lead a prudent man to form a belief as to the subject matter of the material, and if followed by inquiry would have disclosed its character. (*Feldman v. South Carolina Tax Commission*, 203 S. C. 49, 56, 26 S. E. (2d) 22.)

The statutory definition meets the constitutional requirement of *scienter* as a prerequisite of prosecution.

In any event, appellants were not prejudiced by the inclusion in the statutory definition of the requirement that one make reasonable inspection of the material to determine its character, because, admittedly, appellants had actual knowledge of the character of the film shown. The only question was whether it was obscene within the meaning of the statute.

We find no merit in any of the attacks upon the constitutionality of the statutes.

The further contention that the question of whether the films were obscene or not should have been determined in the first instance by the trial judge and then by the jury is without merit. We held in *State v. Watkins*, 259 S. C. 185, 191 S. E. (2d) 135 that, under conflicting testimony, the issue of obscenity is a question of fact to be determined by the jury. The trial judge properly submitted the question of obscenity to the jury, upon determining that there was a factual issue thereabout.

Appellants also argue that the trial judge should have granted their motions for a directed verdict of not guilty. In addition to the constitutional questions urged and discussed above, the motions for a directed verdict were made upon the grounds that the State failed to prove beyond a reasonable doubt that (1) appellant Clarke was exhibiting the film, (2) the film was obscene, and (3) appellants had knowledge of the contents or character of the films.

In addition to the testimony of the officers as to their observation of the actions of appellants during the showing of the films on October 7, 1973, appellant Clarke testified that he was working with appellant Thompkins at the theatre at the time and that they had shown the films. We have stated, in general terms, the sex conduct exhibited and appellants testified that they knew the nature of the films. Under this testimony and upon the basis of the films in evidence, no rational conclusion could be reached other than that the appellants were guilty of knowingly exhibiting obscene motion pictures in violation of the South Carolina obscenity statutes. No other verdict could have been reasonably reached under the evidence.

The final question concerns alleged error in the charge. These involve the refusal of the trial judge to give certain requested instructions and to require that a special verdict or finding be made as to the obscenity of each of the films involved.

We find it unnecessary to deal separately with each of the alleged errors in the instructions. Basically the exceptions to the charge allege that the trial judge failed to instruct the jury in accordance with the requirements and guidelines set forth in *Miller v. California, supra.* However, a careful examination of the entire charge shows that the jury was properly instructed on all elements of the offense according to the Miller standards. The charge, as a whole, contained a fair statement of the issues and the applicable legal principles, and we find no basis upon which to conclude that the rights of appellants were prejudiced by the instructions given or by the refusal to instruct the jury in the language requested.

Neither did prejudice result from the refusal of the trial judge to require the jury to make special findings as to the obscenity of each of the films, so that the verdict would reveal whether one or both were found to be obscene. In order to sustain the convictions, it was

only necessary for the jury to find that one of the films was obscene. Therefore, the failure to specify whether one, or both, were obscene would not entitle appellants to a reversal.

Appellants argue, however, that, without separate findings as to each film it is impossible to know whether, in exercising the right to destroy the material after conviction, the jury found one or both to be obscene and therefore contraband. Whether the films may be destroyed after conviction is irrelevant to a determination of the validity of the finding that appellants were guilty of exhibiting obsence films, since a conviction may properly rest on the finding, inherent in the verdict, that at least one of the films was obscene. However, we have been unable to find anything in this record upon which a conclusion could be reasonably reached that one film was obscene and the other was not, or that one was less obscene than the other. If there is a basis for differentiation between the two films as to their obscenity, appellants have failed to give to the court any intimation as to what the distinction might conceivably be. The refusal of the trial judge to require the requested special finding, therefore, may be soundly affirmed upon the ground that there was a total lack of any factual basis to justify the special verdict.

All exceptions are overruled and the judgment is affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.