651 S.E.2d 314

**The STATE, Respondent,**

v.

**Ronte HOUEY, Appellant.**

**No. 26381.**

Supreme Court of South Carolina.

Heard June 5, 2007.

Decided Sept. 10, 2007.

Thomas E. Shealy, of Gaffney, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia, and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

Justice PLEICONES:

Ronte Houey (Appellant) was charged with second-degree criminal sexual conduct with a minor (CSCM). The solicitor moved pursuant to S.C.Code Ann. § 16–3–740(B) (2003) for an

order requiring Appellant to submit to testing for HIV and other diseases. The circuit court ordered the testing, and we affirm.

## FACTS

After Appellant was arrested and charged with second-degree CSCM, the solicitor, at the request of the victim's legal guardian, moved for an order requiring Appellant to submit to HIV and other STD testing pursuant to S.C.Code Ann. § 16–3–740(B).[1] Appellant opposed the motion, arguing the State must first demonstrate probable cause that Appellant actually carries the disease before testing may be ordered. He claimed the failure of § 16–3–740(B) to require such a probable cause determination resulted in an unconstitutional invasion of his privacy. Appellant also argued the statute was unconstitutionally vague.

The circuit court issued an order requiring Appellant to be tested, finding any alleged constitutional violations were irrelevant in light of the State's stipulation that it would not use the test results during trial. The circuit court also found that testing ordered pursuant to § 16–3–740(B) did not violate Appellant's constitutional rights.

## ISSUES

1. Does S.C.Code Ann. § 16–3–740(B) require the State to establish probable cause that a suspect is actually infected with a disease before testing may be ordered?

2. Is S.C.Code Ann. § 16–3–740(B) unconstitutionally vague?

## 1. PROBABLE CAUSE

██ Appellant asserts § 16–3–740(B) permits a search of an individual's bodily fluids without a probable cause determination the defendant is actually infected. As such, he argues it violates Fourth Amendment guarantees against unreasonable

---

1. Despite the caption which implies sexually transmitted diseases are included, § 16–3–740(B) only allows for petitions for court orders to have an offender tested for Hepatitis B and HIV.

searches and seizures, as well as Article I, section 10 of the South Carolina Constitution. We disagree.[2]

Section 16–3–740(B) provides:

(B) Upon the request of a victim who has been exposed to body fluids during the commission of a criminal offense, or upon the request of the legal guardian of a victim who has been exposed to body fluids during the commission of a criminal offense, the solicitor must, at any time after the offender is charged, or at any time after a petition has been filed against an offender in family court, petition the court to have the offender tested for Hepatitis B and HIV. An offender must not be tested under this section for Hepatitis B and HIV without a court order. To obtain a court order, the solicitor must demonstrate the following:

(1) the victim or the victim's legal guardian requested the tests;

(2) there is probable cause that the offender committed the offense;

(3) there is probable cause that during the commission of the offense there was a risk that body fluids were transmitted from one person to another; and

(4) the offender has received notice of the petition and notice of his right to have counsel represent him at a hearing.

The results of the tests must be kept confidential and disclosed only to the solicitor who obtained the court order. The solicitor shall then notify only those persons designated in subsection (C).

S.C.Code Ann. § 16–3–740(B).

The State concedes the testing of blood is a search within the ambit of the Fourth Amendment. *See Skinner v. Ry. Lab. Exec.*, 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *State v. Baccus*, 367 S.C. 41, 53, 625 S.E.2d 216, 222

---

**2.** Initially, we find the circuit court erred by holding any potential constitutional violation would be harmless given the State's agreement not to use the test results against Appellant. The agreement is irrelevant because § 16–3–740(I) precludes admission of test results gathered pursuant to subsection (B) in the offender's criminal trial. Nonetheless, we do not believe the testing violated Appellant's constitutional rights.

(2006). However, the United States Supreme Court has used a special needs analysis, rather than a traditional probable cause inquiry, in cases where testing of bodily fluids was sought not as part of a criminal investigation, but rather to promote other important state interests.[3]

██ The special needs exception allows a search unsupported by probable cause when special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirements of the Fourth Amendment impracticable. *Skinner, supra* at 619, 109 S.Ct. 1402. In "special needs" cases, where the object of the search is not to discover evidence to be used at a criminal trial, the State's need to search must be balanced against the invasion occasioned by the search, and the search will be reasonable if the State's interest outweighs the interest of the individual. *Adams v. State,* 269 Ga. 405, 498 S.E.2d 268, 271 (1998) (citing *Skinner, supra* at 619, 109 S.Ct. 1402).

We must first determine whether a special need exists which allows the State to test an offender pursuant to § 16–3–740(B). We find that the State has a valid interest in protecting the health and safety of victims. Moreover, since § 16–3–740(C) requires counseling for the offender and counseling for the victim at the victim's request, the statute furthers the State's interest in stemming the spread of HIV and Hepatitis B through education and counseling. As stated by the Illinois Supreme Court:

> There are few, if any, interests more essential to a stable society than the health and safety of its members. Toward that end, the State has a compelling interest in protecting and promoting public health and, here, in adopting measures reasonably designed to prevent the spread of AIDS.... Once persons who are carriers of the virus have

---

**3.** *See Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997) (analyzing Georgia statute requiring drug tests of candidates for state office); *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (analyzing school district's requirement that student athletes be tested for drug use); *Natl. Treas. Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (analyzing United States Customs Service employee drug testing program); and *Skinner, supra* (analyzing Federal Railroad Administration employee drug testing program).

been identified, the victims of their conduct and the offenders themselves can receive necessary treatment, and, moreover, can adjust their conduct so that other members of the public do not also become exposed to HIV. In this way, the spread of AIDS through the community can be slowed, if not halted. We believe that the HIV testing requirement advances a special governmental need.

*People v. Adams,* 149 Ill.2d 331, 173 Ill.Dec. 600, 597 N.E.2d 574, 580–581 (1992) (cited in *Adams v. State, supra* ).

■ In relation to Appellant's privacy interest, the Fourth Amendment permits minor intrusions by the State into an individual's body under stringently limited conditions. *State v. Allen,* 277 S.C. 595, 597, 291 S.E.2d 459, 460 (1982). Although § 16–3–740(B) does not specify how the offender should be tested, the statute has a provision for additional testing by blood, saliva, and head or pubic hair. S.C.Code Ann. § 16–3–740(F). Regardless of the manner tested pursuant to this section, Appellant has a nominal privacy interest in being free from HIV and Hepatitis B testing, even where such minimally invasive testing is done only for health reasons outside the context of a criminal investigation.

■ Where the privacy interests implicated by the search are minimal, and where an important non-criminal governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion. *Skinner, supra* at 624, 109 S.Ct. 1402. Such is the case here. The State's interest in these cases would be jeopardized by requiring individualized suspicion because it would be nearly impossible to show probable cause that an offender suffers from HIV or Hepatitis B, since neither disease usually manifests clear outward symptoms. Thus, the statute does not violate the Fourth Amendment by failing to require probable cause that the offender has HIV or Hepatitis B before a court may order testing pursuant to § 16–3–740(B).

While the Fourth Amendment does not require probable cause and a warrant where special needs exist, our legislature has acted to provide extra protection. Under § 16–3–740(B), both probable cause AND a court order are required before an offender may be tested. Our holding today that the special

needs exception applies to the issue of particularized suspicion does not render these statutory prerequisites impracticable or unnecessary.

Appellant's argument that § 16–3–740(B) is unconstitutional under the South Carolina Constitution also fails. Although our constitution favors a higher level of privacy protection than the Fourth Amendment, *State v. Forrester,* 343 S.C. 637, 541 S.E.2d 837 (2001), the testing at issue here is not overly intrusive or so unreasonable as to render the statute violative of the South Carolina Constitution.

Accordingly, we hold that probable cause based on individualized suspicion that an offender carries HIV or Hepatitis B is not required by the Fourth Amendment of the United States Constitution or by Article I, section 10, of the South Carolina Constitution.

## 2. VAGUENESS

Appellant also contends § 16–3–740(B) is unconstitutionally vague, inasmuch as it allows testing without regard to the timing of an alleged crime. Appellant's argues that since there is no requirement of immediate testing of a suspect, any test result may not necessarily be indicative of the suspect's condition at the time of the alleged assault. We disagree.

The void-for-vagueness doctrine rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. *Peterson Outdoor Advert. v. City of Myrtle Beach,* 327 S.C. 230, 236, 489 S.E.2d 630, 633 (1997). As to civil standards, there appears a less stringent test than that applied in criminal contexts. *See Village of Hoffman Est.,* 455 U.S. 489, 498–499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (stating criminal statutes, in general, face a higher vagueness standard than do civil statutes because the consequences of imprecision in the latter are qualitatively less severe).

Appellant's arguments regarding the timing of testing address evidentiary concerns in the context of the criminal proceeding. Appellant's concerns are not relevant in light of the State's interest in preventing the spread of HIV and Hepatitis B and the State's interest in protecting the health of

alleged victims. These interests are advanced regardless of the time of testing. Accordingly, we find no constitutional violation due to vagueness.

## CONCLUSION

We hold that the State need not show probable cause that an offender has a disease before testing may be ordered pursuant to § 16–3–740(B), provided the statutory require- ments have been met. In addition, § 16–3–740(B) is not unconstitutionally vague. The circuit court's order is

**AFFIRMED.**

TOAL, C.J., and Acting Justice E.C. Burnett, III, concur.

WALLER, J., concurring in result only in a separate opinion in which MOORE, J., concurs.

Justice WALLER:

I concur in result with the majority opinion, but write separately in adherence to my opinion, as originally written, which is as follows:

Appellant, Ronte Houey, was indicted in November 2005 for criminal sexual conduct (CSC) in the second degree with a minor. The solicitor moved pursuant to S.C.Code Ann. § 16– 3–740(B) (2003) for an order requiring Houey to submit to testing for HIV[4] and other sexually transmitted diseases (STD). Houey appeals the order, contending both that § 16– 3–740 is unconstitutionally vague, and that the state has no legitimate public health interest in requiring him to be tested for HIV or other diseases. We disagree and affirm.

## FACTS

Houey was arrested and charged with second-degree CSC for having had sexual intercourse in August 2005, with a girl who was thirteen years old; Houey was twenty years old at the time. Thereafter, at the request of the Victim's legal guardian, the solicitor moved for an order requiring Houey to submit to HIV and other sexually transmitted disease testing

---

4. Human immunodeficiency virus.

pursuant to S.C.Code Ann. § 16-3-740(B). Houey opposed the motion, contending the state must first demonstrate probable cause Houey actually carried a sexually transmitted disease or was HIV positive before testing could be ordered. He contended the failure of § 16-3-740(B) to require such a probable cause determination resulted in an unconstitutional invasion of his privacy. He also contended the statute was impermissibly vague.

The circuit court issued an order requiring Houey to be tested, finding any alleged constitutional violations were irrelevant in light of the state's stipulation that it would not use the test results during trial. Houey appealed; while the appeal was pending, however, Houey was tried and acquitted of the offense with which he was charged. Accordingly, he has not been tested.

## ISSUES

1. Does S.C.Code Ann. § 16-3-740(B) require the state to establish probable cause that a suspect is actually infected with a sexually transmitted disease before testing may be ordered?

2. Is S.C.Code Ann. § 16-3-740(B) unconstitutionally vague?

## 1. PROBABLE CAUSE

Houey asserts S.C.Code Ann. § 16-3-740 unconstitutionally permits a search of an individual's body fluids without a probable cause determination the defendant is infected with HIV or STD's. As such, he contends it violates Fourth Amendment guarantees against unreasonable searches and seizures. U.S. Const. amend. IV; S.C. Const. art. I, § 10. We disagree.

S.C.Code Ann. § 16-3-740(B) provides, in pertinent part:

(B) Upon the request of a victim who has been exposed to body fluids during the commission of a criminal offense, or upon the request of the legal guardian of a victim who has been exposed to body fluids during the commission of a criminal offense, the solicitor must, at any time after the offender is charged, or at any time after a petition has been

filed against an offender in family court, petition the court to have the offender tested for Hepatitis B and HIV. An offender must not be tested under this section for Hepatitis B and HIV without a court order. To obtain a court order, the solicitor must demonstrate the following:

(1) the victim or the victim's legal guardian requested the tests;

(2) there is probable cause that the offender committed the offense;

(3) there is probable cause that during the commission of the offense there was a risk that body fluids were transmitted from one person to another; and

(4) the offender has received notice of the petition and notice of his right to have counsel represent him at a hearing.

The results of the tests must be kept confidential and disclosed only to the solicitor who obtained the court order. The solicitor shall then notify only those persons designated in subsection (C).

Initially, we agree with the circuit court that given the state's agreement it would not use the test results against Houey, any Fourth Amendment violation is harmless. *See State v. Forrester,* 343 S.C. 637, 643, 541 S.E.2d 837, 840 (2001) (evidence obtained in violation of the Fourth Amendment is inadmissible in both state and federal court). In any event, we find no Fourth Amendment violation.

The state concedes the testing of blood for HIV or STD's is a search within the meaning of the Fourth Amendment. *See State v. Baccus,* 367 S.C. 41, 625 S.E.2d 216 (2006). *See also Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997); *Skinner v. Ry. Labor Executives,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). When such a search is conducted in furtherance of criminal investigation, the balance is tipped in favor of the defendant and the search "is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *Skinner,* 489 U.S. at 624, 109 S.Ct. 1402. However, an exception to the warrant clause may apply when "special needs, beyond the normal need for law enforcement, make the warrant and

probable-cause requirement impracticable." *Id.* In *Skinner*, the U.S. Supreme Court held that where the privacy interests implicated by a search are minimal, and where an important governmental interest furthered by an intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion. *Id.*

As noted by the New Jersey Supreme Court in *State in Interest of J.G.*, 151 N.J. 565, 701 A.2d 1260, 1266 (1997),

Recently, the Supreme Court has used a special needs analysis in cases where body searches were not conducted to further a criminal investigation, but rather, were alleged to promote other important state interests. *See Chandler*, 520 U.S. at 326 117 S.Ct. 1295 (applying special needs analysis to Georgia statute requiring drug tests of candidates for state office); *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (applying special needs analysis to requirement that student athletes be tested for drug use); *Von Raab*, 489 U.S. at 656, 109 S.Ct. 1384 (applying special needs analysis to United States Customs Service employee drug testing program); *Skinner*, 489 U.S. at 602, 109 S.Ct. 1402 (applying special needs analysis to Federal Railroad Administration employee drug testing program); *see also Stigile v. Clinton*, 110 F.3d 801 (D.C.Cir.1997) (applying special needs analysis to Office of Management and Budget's random drug testing program); *Tanks v. Greater Cleveland Reg'l Transit Auth.*, 930 F.2d 475 (6th Cir.1991) (applying special needs analysis to suspicionless drug testing of bus driver); *Transport Workers' Union of Philadelphia, Local 234 v. SEPTA*, 884 F.2d 709 (3d Cir.1989) (applying special needs analysis to SEPTA's drug testing program).

The *Interest of J.G* court found HIV testing of accused sex offenders ranks among the limited circumstances in which suspicionless searches are warranted, noting that "the warrant and individualized suspicion requirements are impractical in this context ... HIV infected sexual offenders often have no outward manifestations of infection, which means that probable cause or individualized suspicion that an assailant is infected with the AIDS virus could not be found without testing. . . . Requiring probable cause or individualized suspicion before

testing could be conducted would create the proverbial Catch–22 and would frustrate the governmental purpose behind the search." 701 A.2d at 1267 (Internal citations omitted). *See also State v. Wallace,* 2005 WL 940029 (Ohio App. 2 Dist.2005) (statute authorizing warrantless testing for STD's upon indictment for enumerated sex offenses did not violate right of privacy, due process or right to be free from unreasonable search and seizure).

We find S.C.Code Ann. § 16–3–740 does not effect an unconstitutional invasion of Houey's privacy. The test may be ordered only if 1) the victim or a guardian requests it, 2) there is probable cause to believe the defendant committed the offense, and 3) there is probable cause to believe there is a risk bodily fluids may have been transferred from the defendant to the victim. Further, dissemination of the results of any such testing is extremely limited. Given the interests of the victim in ascertaining whether the alleged assailant is HIV positive, we find the statute sufficiently complies with the special needs analysis set forth by the United States Supreme Court in *Skinner* and *Chandler.*

## 2. VAGUENESS

Houey also contends S.C.Code Ann. § 16–3–740 is impermissibly vague, inasmuch as it allows testing without regard to the timing of an assault. Houey's contention is essentially that, since there is no requirement of immediate testing of a suspect, any test result may not necessarily be indicative of the suspect's condition at the time of the alleged assault. We find no constitutional violation.

Generally, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). As to civil standards, there appears a less stringent test than that applied in criminal contexts. *See Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (criminal statutes, in general, face a higher vagueness standard than do civil statutes because the consequences of imprecision are qualitatively less severe); *In*

*re Guardianship of Carlsmith,* 113 Hawai'i 236, 151 P.3d 717 (2007) (when a statute is not concerned with criminal conduct or first amendment considerations, the court must be fairly lenient in evaluating a claim of vagueness. A civil statute must be so vague and indefinite as really to be no rule or standard at all. Uncertainty is not enough for statute to be unconstitutionally vague; rather, it must be substantially incomprehensible).

A statute can be impermissibly vague for either of two independent reasons. First, it may fail to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Or, second, it may authorize or encourage arbitrary and discriminatory enforcement. *Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); *State v. Thompkins,* 263 S.C. 472, 211 S.E.2d 549 (1975). *See also In re Amir X.S.,* 371 S.C. 380, 391, 639 S.E.2d 144, 150 (2006) (concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication); *Curtis v. State,* 345 S.C. 557, 549 S.E.2d 591 (2001).

Under the facts of this case, due to the relatively brief period of time between the alleged assault (August 2, 2005), and the date on which the state sought testing (October 27, 2005), we find no constitutional violation.

**AFFIRMED.**

MOORE, J., concurs.